

U.S. Department of Justice

*United States Attorney*
*District of New Jersey*

*970 Broad Street, Suite 700*
*Newark, New Jersey 07102*
*973-645-2930 (voice)*
*973-645-2857 (facsimile)*

January 29, 2008

Hon. Faith S. Hochberg
United States District Judge
U.S. Post Office & Federal
Courthouse Building
Federal Square
Newark, New Jersey 07102

      Re:    <u>United States v. Frederick Schiff</u>, Crim. No. 06-406 (FSH)

Dear Judge Hochberg:

      Please accept this letter brief in lieu of a more formal submission in response to the issues raised in Defendant Frederick Schiff's January 26, 2008 letter. By Order dated January 24, 2008, the Court directed Defendant Schiff to brief any arguments previously incorporated by reference in his December 19, 2007 motion <u>in limine</u>. In response, Defendant Schiff has addressed only two issues: (1) his liability under the securities laws for the statements, misrepresentations, and omissions of others; and (2) the applicability of scheme liability to a criminal securities fraud prosecution.[1]

**I.    SCHIFF IS LIABLE FOR THE STATEMENTS OF OTHERS BY VIRTUE OF HIS FIDUCIARY OBLIGATIONS**

      Schiff seeks to limit his duty under the securities laws to correct "an inaccurate, incomplete or misleading prior disclosure" of material information. <u>Oran v. Stafford</u>, 226 F.3d 275, 285 (3d Cir. 2000). But courts have repeatedly held that high-ranking officers and executives such as Defendant Schiff have a fiduciary relationship of trust and confidence with shareholders that carries a duty of disclosure, and the duty to correct the public misstatements and material omissions of others. <u>Barrie v. Intervoice-Brite, Inc.</u>, 397 F.3d 249, 262 (5th Cir.), <u>modified</u>, 409 F.3d 653 (5th Cir. 2005) ("'[A] high ranking company official cannot sit quietly at a conference call with analysts, knowing that another official is making false statements, and hope to escape liability for those statements. If nothing else, the former official is at fault for a

---

[1] Consistent with the Court's Order, the Government construes Defendant Schiff's January 26 letter as an abandonment of all other challenges to the sufficiency of the indictment that he previously sought to incorporate by reference—including various arguments briefed by defendant Lane—and thus confines its response to these two arguments.

material omission in failing to correct such statements.'" (quoting In re SmarTalk Teleservs., Inc. Sec. Litig., 124 F. Supp. 2d 527, 543 (D. Ohio 2000)); S.E.C. v. DiBella, 2007 WL 2904211, at *9-11 (D. Conn. Oct. 3, 2007); see also Ltr. from United States of America in Further Opposition to Defendant Lane's Motion to Dismiss, Oct. 29, 2007.  Indeed, this precise principle was applied in a recent criminal securities fraud case holding that the silence of a senior corporate executive regarding material misstatements to investors by another executive is a basis for criminal liability in a prosecution under § 10(b).  See United States v. Causey, No. H-04-0250SS, 2005 WL 3560632, at *7-9 (S.D. Tex. Dec. 29, 2005) (rejecting defendant's motion to strike allegations in the indictment that he failed to correct a misleading statement made by a coconspirator on an analyst call).  Like the defendants in Barrie, SmarTalk, DiBella, and Causey, Defendant Schiff was an officer of BMS, with affirmative responsibilities for the company's public statements to the investing public in analyst calls, as well as its SEC filings.  In light of these obligations, and his concomitant relationship of trust and confidence with BMS shareholders, Schiff had a duty to correct the inaccurate, incomplete, and misleading disclosures of others.

Defendant Schiff does not address these decisions, or distinguish the criminal indictment upheld in Causey, relying instead on the civil decision in In re Bristol-Myers Squibb Sec. Litig., 312 F. Supp. 2d 549 (S.D.N.Y. 2004).  In re Bristol-Myers, however, concerned the limitations of "scheme liability" in civil suits under the implied private right of action under § 10(b),[2] noting that allegations of false statements made by third parties are "addressed to the wrong defendant." Id. at 559.  In re Bristol-Myers found no factual allegation that the company had associated itself with the statements of outsiders sufficiently to "entangle" BMS in those representations, and make the statements its own.  Id. at 559-60 (citing Elklind v. Ligget & Myers, Inc., 635 F.2d 156, 162-63 (2d Cir. 1980) ("We have no doubt that a company may so involve itself in the preparation of reports and projections by outsiders as to assume a duty to correct material errors in those projections.").  Here, in contrast, the Superseding Indictment plainly alleges that Schiff and Lane schemed to intentionally conceal BMS's use of financial incentives to wholesalers, and the resulting growth of excess inventory.  Accordingly, Schiff is liable not only for his own statements and material omissions, but for his intentional silence regarding public disclosures he knew were false, misleading or omitted material facts.

## II.   SCHEME LIABILITY IS APPLICABLE TO THE CHARGES AGAINST SCHIFF

Schiff's second argument attempts to side-step the unquestioned applicability of "scheme liability" to a criminal securities fraud prosecution, by reference to civil actions alleging scheme liability.  First, his claim ignores the broad sweep of Section 10(b) and Rule 10b-5 in criminal actions.  The Supreme Court has long interpreted the statutory language in Section 10(b), and the implementing provisions of Rule 10b-5, expansively to "prohibit all fraudulent schemes in

---

[2] As explained below, the Supreme Court's recent ruling in Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc. makes clear that no such limitation on scheme liability applies to criminal prosecutions.

connection with the purchase or sale of securities, whether the artifices employed involve a garden type variety of fraud, or present a unique form of deception." Superintendent of Ins. v. Bankers Life & Cas. Co., 404 U.S. 6, 11 n.7 (1971) (citation omitted); Santa Fe Indus., Inc. v. Green, 430 U.S. 462, 477 (1977) ("Congress meant to prohibit the full range of ingenious devices that might be used to manipulate securities prices."); see also 3 L. Sand et al., Modern Federal Jury Instructions-Criminal Instr. 57-21 (2007) (explaining elements of § 10(b) and noting "[f]raud is a general term which embraces all efforts and means that individuals devise to take advantage of others."). By contrast, private civil actions exist as a "supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2504 (2007). These supplementary private rights of action are far narrower in scope, constrained by the "control measures" Congress passed in the Private Securities Litigation Reform Act of 1995 "[a]s a check against abusive litigation by private parties." Id.

The Supreme Court recently noted the important distinction between private civil securities fraud claims and criminal prosecutions and SEC enforcement actions in Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc., No. 06-43, 2008 WL 123801, at *8 (Jan. 15, 2008). The Supreme Court explained that "scheme liability" does not apply to private civil actions against secondary actors who, absent a public statement, engaged in conduct creating a false appearance of material fact. Id. at *6. The Court's holding rested on its observation that that the "§ 10(b) private right should not be extended beyond its present boundaries," and it "is for Congress" to expand the scope of the civil cause of action, should it so choose. Id. at *8. The Court, however, took care to point out that such secondary actors remain "subject to criminal penalties, see, e.g., 15 U.S.C. § 78ff, and civil enforcement by the SEC." Id. at *9.

Schiff does not address Stoneridge, and his recitation of civil "scheme liability" cases as a limit on the charges in the Superseding Indictment cannot be squared with the Supreme Court's direction, and Congress' intent in enacting the 1934 Act "as a vehicle to minimize fraud in securities trading." United States v. Haddy, 134 F.3d 542, 548 (3d Cir. 1998). For these same reasons, there is no talismanic significance to the nature of the business practices at issue in this case. "The keystone required for a jury to convict a defendant pursuant to subsections (a) or (c) of Rule 10b-5 is a finding of a fraudulent scheme or course of business." United States v. Bongiorno, No. 05-Cr.-390, 2006 WL 1140864, at *5 (S.D.N.Y. May 1, 2006) (denying motion to dismiss indictment charging violations of 10b-5(a) and (c)). Here, the Superseding Indictment alleges that the sales incentives, compensation to the wholesalers for inventory they had already purchased, and deliberate building and concealment of excess inventory were undertaken with fraudulent intent. A criminal "device, scheme or artifice to defraud" under § 10(b) "is merely a plan for the accomplishment of any objective." Modern Federal Jury Instructions-Criminal Instr. 57-21. There is no requirement that the plan center on illegal acts, manipulative conduct, or material misrepresentations or omissions. See Bongiorno, 2006 WL 1140864, at *6.

Thus, for example, in United States v. Finnerty, Nos. 05-Cr-393, 05-Cr-397, 2006 WL 2802042 (S.D.N.Y. Oct. 2, 2006), the court denied a motion to dismiss a securities fraud indictment under Rule 10b-5(a) and (c) and rejected the same argument urged by Schiff

concerning the legitimacy of the underlying conduct. In Finnerty, the defendants argued that their stock trades "were recorded and published" and that "[t]here was neither concealment nor disguise" of their conduct. Id. at *5. The court explained that this "definition of 'deceptive' in the securities fraud context, however, would limit the term to only sham transactions. That definition of 'deceptive' would unjustifiably curtail its meaning." Id. Likewise, as the Government has previously noted, while "the business practice of offering sales incentives to wholesalers was not" – in isolation – "deceptive or unlawful," Schiff's scheme fraudulently deceived the investing public concerning BMS's inventory, sales, and actual consumer demand. Ltr. of the United States, Aug. 3, 2007, at 7. Under subsections (a) and (c), therefore, Schiff may be found liable for engaging in a fraudulent scheme or course of business.[3]

## III.  CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion to dismiss and motion in limine.

Respectfully submitted,

CHRISTOPHER J. CHRISTIE
United States Attorney

/s/ Paul B. Matey

By: Paul B. Matey
Joshua Drew
Michael Martinez
Assistant U.S. Attorney

cc:    Steven R. Glaser, Esq.

---

[3] Moreover, as the Government has previously explained, Schiff is liable if he aided, abetted, counseled, induced or caused Lane's conduct. See 18 U.S.C. § 2; 15 U.S.C. § 78t(e); see also Ltr. of the United States, Aug. 3, 2007, at 9-10. This express statutory authority for aiding and abetting in a criminal action also distinguishes Schiff's liability from the defendants in the civil cases he cites.