UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Faith S. Hochberg |
| v. | : | Criminal No. 06-406 (FSH) |
| FREDERICK S. SCHIFF | : | |

MEMORANDUM IN SUPPORT OF THE MOTION IN LIMINE
OF THE UNITED STATES TO ADMIT STATEMENTS OF CO-CONSPIRATORS
PURSUANT TO FEDERAL RULE OF EVIDENCE 801(d)(2)(E)

CHRISTOPHER J. CHRISTIE
United States Attorney
United States Attorney's Office
970 Broad Street
Newark, New Jersey 07102
(973) 645-2700

On the Brief:

Joshua Drew
Michael Martinez
Paul B. Matey
Assistant United States Attorneys

I.  **PRELIMINARY STATEMENT**

The United States submits this Memorandum in support of its Motion In Limine to admit statements of co-conspirators pursuant to Federal Rule of Evidence 801(d)(2)(E) (referred to herein as "the Rule").  The Government respectfully reserves its right to supplement this memorandum by oral argument.

II.  **BACKGROUND**

On February 1, 2008, and pursuant to the Court's July 30, 2007 Order requiring the Government to "identify coconspirators," the Government provided Defendant Schiff with a list of individuals whose statements may be offered at trial pursuant to Rule 801(d)(2)(E).  Pursuant to the Court's directive at the February 7, 2008 status conference, the Government now moves in limine to admit certain statements by these individuals at trial against Defendant Schiff.[1]

III.  **LEGAL REQUIREMENTS OF RULE 801(d)(2)(E)**

The Government may offer statements contained in documents and other materials, and present witness testimony, pursuant to Federal Rule of Evidence 801(d)(2)(E).  The Rule provides that "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is not hearsay, and is therefore not objectionable under Federal Rule of Evidence 802.  See United States v. De Peri, 778 F.2d 963, 981 n.4 (3d Cir. 1985) (explaining that co-conspirator statements "are not 'hearsay exceptions' but are excluded from the definition of hearsay as a type of party admission").  Under Rule 801(d)(2)(E), the statement of a

---

[1] This Motion In Limine does not delineate the Government's anticipated proofs against Richard J. Lane and the Government reserves its rights to file separate motions in that matter.  In addition, this Motion addresses only the admissibility of statements under Rule 801(d)(2)(E) identified to date, and therefore does not discuss other grounds for admissibility applicable to these statements.  The Government will address additional arguments for admitting these statements as necessary in a separate motion.

co-conspirator is admissible against a defendant where the proponent demonstrates that: 1) a "conspiracy" or joint venture existed at the time of the statement; 2) the declarant and the party against whom the statement is offered were members of the conspiracy; 3) the statement was made in the course of the conspiracy; and 4) the statement was made in furtherance of the conspiracy.  United States v. Weaver, 507 F.3d 178, 181 (3d Cir. 2007) (reversing motion in limine excluding co-conspirator statements).  The proponent must demonstrate each of these requirements by a mere preponderance of the evidence, and not beyond a reasonable doubt. United States v. Bobb, 471 F.3d 491, 498 (3d Cir. 2006); United States v. Reynolds, 171 F.3d 961, 966 (3d Cir. 2006); United States v. McGlory, 968 F.2d 309, 335 (3d Cir. 1992) ("[T]his preponderance standard simply requires the prosecution to present sufficient proof so that the trial judge may find 'that the existence of the contested fact is more probable than its nonexistence.'") (citation omitted).[2]

It is well-established that the "conspiracy" required under Rule 801(d)(2)(E) is not grounded on the concept of criminal conspiracy, but is instead based on general principles of agency and partnership law.  United States v. Stewart, 433 F.3d 273, 293 (2d Cir. 2006) ("Statements of co-conspirators are admissible on an agency theory."); see also Anderson v.

---

[2] Severance does not alter these requirements.  See United States v. Giampa, 904 F. Supp. 235, 266 n.21 (D.N.J. 1995) (noting that "[e]ven if defendants' trial had been severed from the trial of their co-defendants, it appears statements by co-defendants' would have been admissible against them pursuant to FRE 801(d)(2)(E) as statements of co-conspirators"); see also United States v. Griggs, 2007 WL 3026940, at *14 (E.D. Mo. Oct. 15, 2007) (denying severance and noting "any statements of co-conspirators made during the course of the conspiracy would be admissible against Defendant, even in a separate trial, under FRE Rule 801(d)(2)(E)"); United States v. Jones, 1992 WL 78784, at *5 (E.D. Pa. Mar. 24, 1992) (granting severance and noting efficiencies of separate trials includes ability to quickly verify conspiracies in later trials for purpose of co-conspirator statements).

United States, 417 U.S. 211, 218 n.6 (1974); Lutwak v. United States, 344 U.S. 604, 618 (1953); Hitchman Coal & Coake Co. v. Mitchell, 245 U.S. 229, 249 (1917).[3] As courts have explained, "the rule, based on concepts of agency and partnership law, and applicable in both civil and criminal trials, 'embodies the long-standing doctrine that when two or more individuals are acting in concert toward a common goal, the out-of-court statements of one are . . . admissible against the others, if made in furtherance of the common goal.'" United States v. Gewin, 471 F.3d 197, 201 (D.C. Cir. 2006) (affirming securities fraud conviction) (citation omitted); accord United States v. Trowery, 542 F.2d 623, 626-27 (3d Cir. 1976). Therefore, "[t]he central idea of the term 'conspiracy' in the exception does not depend on the substantive definition of the crime or civil wrong." 4 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 8:59 (3d ed. 2007).

The Third Circuit has held there is a substantial difference "between 'conspiracy' as a crime and the co-conspirator exception to the hearsay rule . . . . The co-conspirator exception to the hearsay rule . . . is merely a rule of evidence founded, to some extent, on concepts of agency law . . . . Its rationale is the common sense appreciation that a person who has authorized another to speak or to act to some joint end will be held responsible for what is later said or done by his agent, whether in his presence or not." Trowery, 542 F.2d at 626; see also 5 Weinstein's

---

[3] For this reason, the Rule is fully applicable in civil cases where no criminal conduct is charged. See, e.g., In re Japanese Elec. Prods. Antitrust Litig., 723 F.2d 238, 262-63 (3d Cir. 1983); In re Fine Paper Antitrust Litig., 685 F.2d 810, 820-21 (3d Cir. 1982); Gray v. Sage Telecom, Inc., No. 05-1677, 2006 WL 2820075, at *5 n.8 (N.D. Tex. Oct. 2, 2006) (considering Rule 801(d)(2)(E) in civil employment action alleging wrongful termination and retaliation); Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc., No. 98-3287, 2001 WL 811930, at *1 (E.D.N.Y. May, 22, 2001) (admitting statements in furtherance of "conspiracy to inhibit marketing of a 'safer' cigarette" and the "intertwined . . . conspiracy to mislead the public with respect to health risks of cigarettes").

Federal Evidence, § 801.34 (2d ed. 2007); 4 Mueller & Kirkpatrick, Federal Evidence § 8:59 ("[T]he exception can apply if people act together by mutual understanding in pursuit of a common purpose and the expression 'joint venture exception' would work as well as the usual term."). Stated simply, the Rule "was meant to carry forward the universally accepted doctrine that a joint venturer is considered as a coconspirator for the purpose of this Rule even though no conspiracy has been charged." Gewin, 471 F.3d at 200-02 (quoting Fed. R. Evid. 801(d)(2)(E) advisory committee note); accord United States v. Ellis, 156 F.3d 493, 497 (3d Cir. 1998) ("The law is well settled that out-of-court statements may be admissible under Rule 801(d)(2)(E) even if the defendant is not formally charged with any conspiracy in the indictment.").

Under Federal Rule of Evidence 104(a), the Court must determine the existence of a joint venture and the participation of the declarant as a preliminary question of admissibility. The co-conspirator statements may be considered as part of the evidence used to satisfy these requirements. Bourjaily v. United States, 483 U.S. 171, 178-79 (1987); Bobb, 471 F.3d at 498. While the Court may make these findings prior to trial, the Third Circuit has specifically noted that in "trials involving a large amount of interrelated testimony, it may be necessary to admit the statements provisionally, subject to a later finding of a conspiracy established by the preponderance of independent evidence." United States v. De Peri, 778 F.2d 963, 981 (3d Cir. 1985); see also United States v. Gambino, 926 F.2d 1355, 1360-61 (3d Cir. 1991); United States v. Continental Group, Inc., 603 F.2d 444, 456-57 (3d Cir. 1979); United States v. Giampa, 904

F. Supp. 235, 286 (D.N.J. 1995).[4] As commentators have noted, a separate admissibility hearing "is time-consuming and fraught with practical difficulties" because "[p]roving the predicate facts is so intertwined with proving the merits that requiring two presentations involves enormous duplication of time and effort." 4 Mueller & Kirkpatrick, <u>Federal Evidence</u> § 8:62.

## IV. ARGUMENT

### A. The Formation and Scope of the Joint Venture

As alleged in the Superseding Indictment, in 2000 and 2001, Defendant Schiff and his co-conspirator Richard Lane used financial incentives to spur wholesalers to buy product in excess of prescription demand, so that BMS could report higher sales and earnings and thereby create a false and misleading picture of BMS's business performance throughout the investing public. As Controller and CFO, defendant Schiff maintained overall responsibility for BMS's financial reporting, including the accuracy and completeness of BMS's filings with the Securities and Exchange Commission. As President of BMS's Worldwide Medicines Group, co-conspirator Lane maintained overall responsibility for BMS's pharmaceutical business. Both Schiff and Lane served as members of the BMS Corporate Operating Committee and its successor, the Executive Committee, where they were responsible for reviewing BMS's business operations and financial goals. As part of the conspiracy charged in Count One of the

---

[4] Naturally, even if the elements of Rule 801(d)(2)(E) are not satisfied for a particular statement, the testimony may be admissible under a separate exception to the hearsay rule. Likewise, the Government may offer statements of a co-conspirator for a purpose other than their truth, which does not implicate the prohibition on hearsay. Fed. R. Evid. 801 advisory committee notes ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay.").

Superseding Indictment, Schiff and Lane caused BMS finance and business unit executives[5] to create packages of financial incentives to BMS's wholesalers which spurred purchases in excess of prescription demand. Then, having used "channel stuffing" to achieve financial performance consistent with BMS's targets and analysts' expectations, Schiff and Lane intentionally concealed this use of financial incentives, and the resulting growth of excess inventory, from BMS shareholders and other members of the investing public. As a result of both these actions, Schiff and his co-conspirator Lane were able to maintain BMS's stock price at artificially high levels, while enriching themselves and the company.

Under Rule 801(d)(2)(E), the statement offered into evidence need not be made by an individual who fully participated in the criminal conspiracy charged in the Superseding Indictment, which includes the incentives provided to wholesalers to purchase inventory above consumer demand, the resulting excess inventory, and the concealment of these practices from the investing public. United States v. Gricco, 277 F.3d 339, 354-55 (3d Cir. 2002); Ellis, 156 F.3d at 497 (holding that if the requirements of the Rule are satisfied, the "statements . . . are non-hearsay regardless of whether they were made in a conspiracy separate from that charged"). Rather, the declarant may have participated in the lesser-included joint undertaking consisting of

---

[5] In 2000 and 2001, David Brienza, William Dock, Tina Fiumenero, Kim Hendricks, and Alan Medici worked in BMS's finance staff under Frederick Schiff. During the same time, Vince Bilinsky, Rose Crane, Jane Heiney-Kogut, and Tom McKenna worked in BMS's business units reporting to Richard Lane. Tim Cost worked in BMS's investor relations and reported to Frederick Schiff. In addition, Frederick Schiff served as the de facto head of finance for BMS's Worldwide Medicines Group, and the finance staff identified here worked directly with the business unit staff in what BMS called a "dotted line" relationship.

the channel stuffing and the wholesaler incentives.[6] Statements made in furtherance of either the entire criminal conspiracy or the factually intertwined joint venture are non-hearsay and admissible. See Ellis, 156 F.3d at 497 (explaining that even if "the continuum of events might be viewed as containing two conspiracies, adopting such a view would not change" the admissibility of statements under the Rule). In addition, the declarant need not be identified as a prerequisite of admissibility. McGlory, 968 F.2d at 335.

Accordingly, the Government may seek to introduce statements under the Rule concerning 1) the creation and offering of packages of financial incentives to BMS's wholesalers; 2) wholesaler purchases in excess of prescription demand; 3) the impact of wholesaler purchases on BMS's financial performance; and 4) Schiff and Lane's concealment of wholesaler financial incentives, and the resulting growth of excess inventory, from BMS shareholders and other members of the investing public. Statements in furtherance of this conspiracy that have been identified by the Government to date are listed below. See Bobb, 471 F.3d at 498 (explaining "statements between co-conspirators which provide reassurance, serve to maintain trust and cohesiveness among them, or inform each other of the current status of the conspiracy further the ends of the conspiracy and are admissible").

---

[6] Statements of Vince Bilinsky, David Brienza, Timothy Cost, Rose Crane, William Dock, Tina Fiumenero, Jane Heiney-Kogut, Kim Hendricks, Tom McKenna, and Alan Medici potentially fall in this second category. The Government has identified some statements from these potential declarants based on its trial preparation to date. If additional statements from these, or other, co-conspirators statements are identified the Government will file additional motions concerning the admissibility of these statements.

### B.     Evidence of the Conspiracy Between Schiff and the Declarants

As noted, in multi-participant joint ventures involving interrelated testimony the Court's determination concerning the existence of a conspiracy and the participation of the declarant is often deferred until the close of the Government's evidence. Gambino, 926 F.2d at 1360-61; De Peri, 778 F.2d at 981; Giampa, 904 F. Supp. at 286. Here, the Government expects to call numerous witnesses to provide interrelated testimony concerning the conspiracy involving Defendant Schiff. Presenting all of this evidence pre-trial will essentially require the Government to try its case twice, an unnecessarily time-consuming and prejudicial approach to resolving this commonly invoked rule of evidence.

Moreover, the Government will present ample evidence of the conspiracy, and Schiff's participation, at trial. Under Bourjaily, the statements outlined below serve as part of the foundation needed to permit the introduction of co-conspirator statements. Beyond these statements, independent evidence will support Schiff's role in the conspiracy including, but not limited to, 1) approvals of sales incentives to wholesalers in 2000 and 2001; 2) meetings at which potential public inquiries concerning BMS's wholesaler inventory were discussed; 3) meetings instructing BMS employees to meet quarterly sales targets; 4) meetings with BMS's Board of Directors concealing or minimizing the issue of excess wholesaler inventory; and 5) public representations of BMS's growing consumer sales on analyst calls, in company press releases, and in the company's Forms 10-Q and 10-K. Because the "government is not required to prove that there was a formal agreement, and circumstantial evidence of the defendant's membership in the conspiracy can also be considered," this proof will satisfy the preponderance standard, and permit the introduction of co-conspirator statements at the close of the evidence.

United States v. Stephenson, 53 F.3d 836, 843 (7th Cir. 1995).

### C. Statements During and in Furtherance of the Conspiracy

The Government may offer the following exhibits into evidence as statements by a co-conspirator made during and in furtherance of the conspiracy: Government Exs. 57, 83, 88, 121, 124, 168, 226, 235, 237, 238, 246, 247, 249, 250, 255, 257, 259, 293, 306, 310, 321, 322, 334, 339, 342, 343, 346, 365, 401, 402, and 403. In addition to these exhibits, the Government provides a preliminary summary of the essence of the expected testimony that may be offered into evidence as statements by a co-conspirator made in furtherance of the conspiracy:[7]

#### 1. Vince Bilinsky

    a. On multiple occasions, asked pharmaceutical wholesalers to purchase additional quantities of BMS pharmaceutical products.

    b. Stated that BMS's incentives to pharmaceutical wholesalers would continue until consumer sales of BMS's pharmaceutical products increased.

    c. Asked a wholesaler what sort of discounts would prompt early payments at the end of 2001.

    d. Explained that Richard Lane approved incentivized sales to pharmaceutical wholesalers because of public commitments concerning BMS's sales and earnings estimates.

---

[7] Pursuant to the Court's directions to the parties during the February 7, 2008 status conference, the Government provides these summaries of anticipated testimony as part of its showing, by a preponderance of the evidence, of the grounds to provisionally admit the statements of co-conspirators subject to introduction of the Government's evidence satisfying all of the requirements of Rule 801(d)(2)(E) by the close of trial. As explained by the Court, these representations of expected testimony do not comprise prior statements of the witnesses under the Federal Rules of Evidence or the Federal Rules of Criminal Procedure, and may not be used or introduced by any party at trial.

2. **Rose Crane**

   a. Stated that Richard Lane instructed her to increase earnings for the fourth quarter of 2001, requiring additional sales to wholesalers.

3. **Richard Lane**[8]

   a. Explained that decisions concerning the amount of wholesaler excess inventory would be made by Richard Lane and Frederick Schiff.

   b. Characterized financial targets established by BMS operating divisions as unacceptably low.

   c. Repeatedly commented on the necessity of making sales and earnings targets.

   d. Commented that failing to meet sales and earnings targets would lead to personnel actions against BMS employees responsible for setting and meeting the targets.

   e. Asked Alan Medici to manage excess wholesaler inventory.

   f. Agreed to give relief from sales and earnings targets in 2001 if excess inventory was built at the end of 2000.

   g. Stated that he had committed to making quarterly sales targets to senior management.

   h. Approved incentivized sales to pharmaceutical wholesalers because of public statements concerning sales and earnings estimates.

   i. Instructed BMS business unit heads to use incentivized sales to close the fourth quarter of 2000 and 2001.

   j. Stated that the BMS Executive Committee and Board of Directors agreed to additional sales of Glucophage in order to make the numbers anticipated by Wall Street.

---

[8] The Government may also seek to introduce some or all of the statements of Richard Lane pled as overt acts in furtherance of the conspiracy in Count One of the Superseding Indictment, and Lane's statements identified in its November 30, 2007 letter. Lane's statements outlined in the November 30 letter are admissible if not offered for their truth. Alternatively, Lane's statements are admissible under Rule 801(d)(2)(E).

k.  Characterized wholesaler excess inventory as not a problem and under control.

l.  Expressed unwillingness to publicly disclose wholesaler excess inventory issues.

m.  Informed BMS's Board of Directors that wholesaler excess inventory build in 2001 was due to products going off patent.

n.  Justified BMS's incentivized sales to pharmaceutical wholesalers because of public commitments concerning BMS's sales and earnings estimates, and consumer sales performance.

o.  Imposed higher earnings targets for BMS's Worldwide Medicines Group in the fourth quarter of 2000 and 2001.

p.  Stated BMS needed to find ways to meet quarterly sales targets despite problems with Vanlev, and the loss of patent protection for pharmaceutical products.

q.  Disagreed with claims that wholesaler excess inventory was the responsibility of BMS's business units.

r.  Refused to inform BMS's Executive Committee that BMS would not meet quarterly sales targets.

## V.    CONCLUSION

For the foregoing reasons, the Court should grant the Government's Motion In Limine and provisionally admit the statements of co-conspirators subject to introduction of the Government's evidence satisfying all of the requirements of Federal Rule of Evidence 801(d)(2)(E) by the close of trial.

                                        Respectfully submitted,

                                        CHRISTOPHER J. CHRISTIE
                                        United States Attorney

                                        /s/ Paul B. Matey

                                        By: Joshua Drew
                                        Michael Martinez
                                        Paul B. Matey
                                        Assistant U.S. Attorneys

Dated: February 12, 2008

## CERTIFICATE OF SERVICE

I, Paul B. Matey, hereby certify that on February 12, 2008 I caused to be served copies of the Memorandum in Support of the United States' Motion In Limine to Admit Statements of Co-Conspirators Pursuant to Federal Rule of Evidence 801(d)(2)(E) via electronic filing on:

| | |
|---|---|
| David M. Zornow, Esquire<br>Skadden, Arps, Slate,<br> Meagher & Flom, LLP<br>Four Times Square<br>New York, New York 10036 | Richard M. Strassberg, Esquire<br>Goodwin Proctor LLP<br>599 Lexington Avenue<br>New York, New York 10022 |
| Attorney for Frederick S. Schiff | Attorney for Richard J. Lane |

/s/ Paul B. Matey

PAUL B. MATEY
Assistant United States Attorney