UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Faith S. Hochberg |
| v. | : | Criminal No. 06-406 (FSH) |
| FREDERICK S. SCHIFF | : | |

---

## TRIAL MEMORANDUM OF THE UNITED STATES

---

CHRISTOPHER J. CHRISTIE
United States Attorney
United States Attorney's Office
970 Broad Street
Newark, New Jersey 07102
(973) 645-2700

On the Brief:

Joshua Drew
Michael Martinez
Paul B. Matey
Assistant United States Attorneys

## TABLE OF CONTENTS

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.   PRETRIAL ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     A.   The Defendant's Exhibit List is Incomplete. . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     B.   Reciprocal Discovery. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     C.   Stipulations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     D.   Estimated Length of Trial. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     E.   Presentation of Evidence and Jury Binders. . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     F.   Use of Evidence During Opening and Closing Arguments. . . . . . . . . . . . . . . . 3

II.  ISSUES CONCERNING TESTIFYING WITNESSES. . . . . . . . . . . . . . . . . . . . . . . . 3

     A.   Attorney Witnesses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     B.   Business Practices. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     C.   Summary Witnesses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     D.   Hostile or Adverse Witnesses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     E.   Expert Witnesses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

     F.   Hypothetical Questions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

     G.   Scope of Cross-Examination. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     H.   Questions Concerning Character and Reputation. . . . . . . . . . . . . . . . . . . . . . 12

     I.   BMS's Deferred Prosecution Agreement, Civil Settlements, and Financial
          Restatement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

III.    GENERAL EVIDENTIARY ISSUES........................................ 16

        A.    Authenticity...................................................... 16

        B.    Summary Charts................................................. 17

        C.    Demonstrative Evidence......................................... 18

IV.    FEDERAL RULE OF EVIDENCE 801. ................................... 19

        A.    Statements Not Offered For Their Truth.......................... 19

        B.    Adopted Statements............................................. 21

        C.    Authorized Statements.......................................... 22

        D.    Statements of Agents........................................... 22

        E.    Co-Conspirator Statements. ..................................... 24

        F.    Statements of the Defendant. .................................... 24

        G.    Prior Consistent Statements...................................... 24

V.    FEDERAL RULE OF EVIDENCE 803. ................................... 26

        A.    Present Sense Impressions....................................... 26

        B.    Excited Utterances.............................................. 27

        C.    Statements Concerning State of Mind............................. 27

        D.    Past Recollections Recorded...................................... 28

        E.    Business Records............................................... 29

VI.    FEDERAL RULE OF EVIDENCE 403. ................................... 31

VII.    FEDERAL RULE OF EVIDENCE 404(b). ................................ 32

VIII.    CONCLUSION. ..................................................... 33

**PRELIMINARY STATEMENT**

Defendant Frederick S. Schiff is charged in a two-count Superseding Indictment with securities fraud and conspiracy to commit securities fraud.  The United States respectfully submits this Memorandum pertaining to issues that may arise during trial, and requests leave to supplement this Memorandum as required before and during trial.

**I.     PRETRIAL ISSUES**

**A.     The Defendant's Exhibit List is Incomplete**

The government has complied with all discovery obligations, including the production of its exhibit list on February 1, 2008.  On February 15, 2008 Defendant Schiff provided a partial exhibit list containing only those materials to be used during the Defendant's case-in-chief, but not during the cross-examination of the Government's witnesses.  In light of the Defendant's incomplete designation, any reduction of the Government's existing exhibit list potentially eliminates materials required to rebut Defendant Schiff's cross-examination of the Government's witnesses.  Accordingly, while the Government reiterates its commitment to present its case efficiently, it is necessary to maintain the existing exhibit list, and may be necessary to mark additional exhibits before and during trial as the contours of the Defendant's case are revealed.

**B.     Reciprocal Discovery**

Pursuant to the Court's April 24, 2007 Order, the Government has received materials from Defendant Schiff identified as reciprocal discovery.  Requiring defendants to provide reciprocal discovery avoids unfair surprise and gamesmanship.  See United States v. Weiss, 914 F.2d 1514, 1525 (2d Cir. 1990) (upholding ruling that precluded defendant from introducing evidence that he had failed to produce in reciprocal discovery); United States v. Jasper, No. 00

Cr. 825, 2003 WL 223212 (S.D.N.Y. Jan. 31, 2003); United States v. Ryan, 448 F. Supp. 810,

811 (S.D.N.Y. 1978).  For this reason, courts have held that a defendant who disregards his

discovery obligations should be precluded from introducing any affirmative evidence as part of

cross examination of government witnesses, even if the documents in question were originally

produced to the defendant by the government, because under Rule 16(b) such materials constitute

part of the defendant's case-in-chief and are discoverable.  See United States v. Hsia, No. 98-

0057, 2000 WL 195067, *2 (D.D.C. Jan. 21, 2000).  In light of this authority, the Government

will object to the introduction at trial of any defense exhibit, whether to be used for cross

examination in the Government's case or offered in the defendant's case, which was not

produced by the defendant as discovery.

## C.    Stipulations

The parties have agreed to a proposed jury instruction stating that Defendant Schiff is not

charged with engaging in any improper accounting practices that violated any principle of

quantitative accounting, whether expressed in GAAP or otherwise, including in connection with

the recognition of revenue paid by wholesalers to BMS for the pharmaceutical sales at issue in

this case.  The Government anticipates that the parties will stipulate that (a) in 2000 through

2002, the common stock of Bristol-Myers Squibb Company was listed and actively traded on the

New York Stock Exchange; and that (b) in 2000 through 2002, trading shares of Bristol-Myers

Squibb Company stock on the New York Stock Exchange involved the use of the facilities of a

national securities exchange, and the means and instrumentalities of interstate commerce.

Additional stipulations may be proposed by the Government prior to trial.

### D.      Estimated Length of Trial

As previously stated, the Government estimates that the direct testimony of its witnesses will require approximately 60 to 90 courtroom hours.  Following the exchange of additional stipulations, the Government expects to make further efforts to streamline its case.

### E.      Presentation of Evidence and Jury Binders

The Government expects to present the majority of its exhibits electronically, but will prepare notebooks containing the relevant exhibits for each Government witness.  At the conclusion of the evidence, the Government requests that hard copies of all of the Government's admitted exhibits be sent back with the jury.  Additionally, the Government may provide each juror with a notebook containing select admitted exhibits.

### F.      Use of Evidence During Opening and Closing Arguments

The Government requests permission to use exhibits in its opening statement that will later be introduced into evidence.  The Government further requests permission to use visual aids such as charts, diagrams, or electronic presentations, during its opening statement and closing arguments.  The Government anticipates that, as it is common practice, Defendant Schiff will not object to the use of exhibits during opening statements.

## II.     ISSUES CONCERNING TESTIFYING WITNESSES

### A.      Attorney Witnesses

The Government may call attorney witnesses, including individuals who may have performed legal services for BMS, a named co-conspirator in this matter.  BMS has waived the attorney-client privilege concerning this case, and the Government does not intend to elicit from

any witness in its case-in-chief testimony that is otherwise protected by the attorney-client privilege.

### B.    Business Practices

The Government may call witnesses employed, or previously employed, by BMS, to provide testimony that reflects particular knowledge possessed by virtue of their employment experience.  Similarly, the Government may call witnesses employed, or previously employed, as securities analysts.  These witnesses will not be asked to provide the type of expert opinion testimony contemplated by Federal Rule of Evidence 702 or Federal Rule of Criminal Procedure 16(a)(1)(G).  Rather, these witnesses will testify as fact witnesses based on their own personal knowledge of business practices and customs.

The Third Circuit has repeatedly recognized that testimony based on personal knowledge regarding business customs and practices does not fall within the ambit of Rule 702.  See, e.g., United States v. Fallon, 470 F.3d 542, 547 (3d Cir. 2006);  Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153 (3d Cir. 1993) (unpublished) (cited in Fed. R. Evid. 701 advisory committee notes for the proposition that a witness may "give lay opinion testimony as to damages, as it was based on his knowledge and participation in the day-to-day affairs of the business"); Asplundh Mfg. Div. v. Benton Harbor Eng'g, 57 F.3d 1190, 1196 (3d Cir. 1995); United States v. Leo, 941 F.2d 181, 196 (3d Cir. 1991).

Moreover, to the extent that BMS employee or analyst testimony amounts to an expression of opinion, their testimony will be grounded by relevant business experience developed during years of employment, and thus helpful to the jury's understanding of disputed factual issues.  Teen-Ed, Inc. v. Kimball Int'l, Inc., 620 F.2d 399, 403 (3d Cir. 1980) (holding

that accountant's personal knowledge of company's balance sheets acquired during the course of his duties "was clearly sufficient under Rule 602 to qualify him as a witness eligible under Rule 701 to testify to his opinion of how lost profits could be calculated and to inference that he could draw from his perception of Teen-Ed's books."); In re Merritt Logan, Inc., 901 F.2d 349, 360 (3d Cir. 1990) (noting that courts favors admission of opinion testimony if founded on witness's personal knowledge and susceptible to cross-examination); Eisenberg v. Gagnon, 766 F.2d 770, 781 (3d Cir. 1985) (rejecting a Rule 701 challenge in a private action for securities fraud to the opinion testimony of an attorney that public offering disclosure materials that he had personally scrutinized were inadequate); see also Medforms, Inc. v. Healthcare Management Solutions, Inc., 290 F.3d 98, 111 (2d Cir. 2002) (affirming admission of lay opinion testimony of a computer programmer regarding his subordinates' work and the meaning of the word "programs" as used in the copyright registrations under Rule 701); Brady v. Chemical Const. Corp., 740 F.2d 195, 200 (2d Cir. 1984) (affirming the admission of lay opinions of an investigator which were based on "facts that he personally had learned during his investigation . . . and the conclusions he had reached . . . . [which] did not require any specialized knowledge and could have been reached by any ordinary person").

As explained in the 2000 amendments to Rule 701 (which added the restriction against the use of specialized knowledge),  business executives can permissibly testify about their companies' financial practices, the manner in which their companies conduct business, and the way in which their companies may have been damaged by wrongful conduct.  This type of testimony is admissible because of the executive's "knowledge and participation in the day-to-day affairs of the business."  Fed. R. Evid. 701 advisory committee note.  Stated differently, a

corporate insider's opinion testimony about the company is "admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness had by virtue of his or her position in the business."  Id.; see generally 4 Weinstein's Federal Evidence § 701.03[3] (2d ed. 2006) ("Lay opinion testimony has been admitted liberally whenever it might conceivably assist the trier of fact in its deliberations.").

Here, any testimony by BMS executives concerning their business is admissible because it will be supported by an adequate foundation, namely their personal and particularized knowledge about BMS's business practices and actions.  See Lightning Lube, Inc., 4 F.3d at 1175; Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 265 (2d Cir. 1995) (noting president of a company could testify as to how lost profits could be calculated since his testimony was based on his personal knowledge of the business); Williams Enters., Inc. v. Sherman R. Smoot Co., 938 F.2d 230, 234 (D.C. Cir. 1991) (allowing broker testimony as a lay witness based on facts, such as an account history, of which he had personal knowledge); see generally DIJO, Inc. v. Hilton Hotels Corp., 351 F.3d 679, 685 (5th Cir. 2003) (recognizing that the 2000 amendment to Federal Rule of Evidence 701 "did not place any restrictions on the pre-amendment practice of allowing business owners or officers to testify based on particularized knowledge derived from their position").  In contrast, however, BMS executives would not be permitted to testify that a particular business practice was not in accordance with GAAP.  See Wechsler v. Hunt Health Sys. Ltd., 198 F. Supp. 2d 508, 529  (S.D.N.Y. 2002) (precluding accountant's proposed testimony, based on his "understanding as a Texas certified public

accountant" that disputed receivables were properly represented on the financial statements under the applicable accounting rules).

Similarly, the extensive professional experience of witnesses employed as securities analysts will be sufficient to support a lay opinion concerning the importance of BMS's disclosures concerning wholesaler excess inventory.  See Joy Mfg. Co. v. Sola Basic Industries, Inc. 697 F.2d 104, 111-112 (3d Cir. 1982) (in an action against a furnace manufacturer for the failure of two furnaces, reversing the district court's exclusion, under Rule 701, of the opinion testimony of the plaintiff's supervisor of production control, where the witness "had sufficient personal knowledge of Joy's heat treating facility to make an estimate of what amount of downtime was due to the hearth problems"); United States v. Mohanlal, 867 F. Supp. 199, 201 (S.D.N.Y. 1994) (admitting lay opinion testimony of a clergyman that the defendant knew the difference between right and wrong, where the clergyman had significant personal contact with the defendant to make his opinion rationally based on his perception and his testimony could be helpful to the jury).

The recent decision in United States v. Ferguson, No. 06-137, 2007 WL 4556225 (D. Conn. Dec. 20, 2007) is precisely on-point.  In that case, the Government offered "lay opinion testimony regarding materiality from securities fraud analyst witnesses" in a securities fraud prosecution.  Id. at *1.  The defendant moved to exclude this testimony arguing that the analysts must be qualified as experts to offer opinions concerning "how their reports and recommendations to clients would have been different if they had known of the allegedly fraudulent nature" of the transactions at issue.  Id. at *2.  The court flatly rejected this argument, finding that the securities analysts' testimony constitutes permissible lay opinion under Rule 701.

Id. at *3.  The court explained that the Government could lay the foundation for a lay opinion through questions asking the analysts to describe (1) the importance of the allegedly fraudulent transactions "to their understanding of [the company's] financial condition"; (2) "the importance of receiving accurate financial information about [the company] to their understanding of how to advise clients"; and (3) "their reliance on [the company's] financial disclosures in writing their reports and making recommendations to clients."  Id.  With this foundation satisfied, the court found that "the analysts' additional proposed testimony explaining how their understanding of [the company's] financial condition—and hence the report they wrote and their advice to clients—would have been different had they known the withheld information requires no specialized or technical knowledge, but rather would permit the witnesses to reach logical conclusions based upon facts they observed."  Id.  The reasoning of the Ferguson Court, which accords with the settled law of the Third Circuit, applies equally to any testimony of securities analysts offered by the Government in this case to demonstrate the materiality of Defendant Schiff's misstatements and omissions.

Finally, simply because BMS executives or analysts could be qualified as experts, they are not precluded from giving non-expert testimony based on their personal knowledge about business practices.  See Teen-Ed, 620 F.2d at 403 (noting that the fact that a company accountant "may have been able to qualify as an expert witness on the use of accepted accounting principles in the calculation of business losses should not have prevented his testifying on the basis of his knowledge of appellant's records about how lost profits could be calculated from the data contained therein.").  For these reasons, BMS employees and securities analysts may properly testify as fact witnesses and give opinion testimony without expert qualification.

### C.     Summary Witnesses

The Government may call witnesses to testify at trial and summarize the testimony of other witnesses as well as the documents or charts admitted into evidence.  See United States v. Osum, 943 F.2d 1394, 1405 (5th Cir. 1991) (summary witness "synthesized" various documents in evidence concerning three accidents, and "categorized" the evidence for the jury); LaVergne, 805 F.2d at 521 ("'one witness's summary of evidence already presented by prior witnesses' is admissible to aid the jury"); United States v. Lemire, 720 F.2d 1327, 1347 (D.C. Cir. 1983) (FBI agent summarized evidence about complex cash flow through offshore companies using summary charts and relying on various documentary and testimonial evidence); United States v. Caswell, 825 F.2d 1228, 1235 (8th Cir. 1987) (explaining "summary witness' testimony may be received as long as that testimony is based on the evidence in the case and the witness is available for cross-examination"); United States v. Evans, 572 F.2d 455, 491-92 (5th Cir. 1978) (FBI agent summarized the evidence admitted at trial, including both documentary and testimonial evidence).  The purpose of a summary witness "is simply to aid the jury in its examination of the evidence already admitted." Scales, 594 F.2d at 563.

### D.     Hostile or Adverse Witnesses

The Government may call a witness who will be hostile or identified with an adverse party.  Federal Rule of Evidence 611(c) provides that when a party "calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions."  Rule 611 does not require the witness to display demonstrable contempt or hostility; rather, the Rule requires only that the witness be evasive or adverse to the Government, or identified with an adverse party.  See United States v. Hicks, 748 F.2d 854, 859 (4th Cir. 1984);

United States v. Brown, 603 F.2d 1022, 1026 (1st Cir. 1979).  In such situations, it is appropriate for the Government to interrogate the hostile witness through leading questions.

Likewise, the Court retains the discretion under Rule 611 to limit the use of leading questions by the defense when the Government calls a witness closely identified with the defendant.  There is no absolute right to ask leading questions on cross-examination.  See Fed. R. Evid. 611(c) ("Ordinarily leading questions should be permitted on cross-examination.").  As explained by the Advisory Committee Notes, "[t]he purpose of the qualification 'ordinarily' is to furnish a basis for denying the use of leading questions when the cross-examination is cross-examination in form only and not in fact."  Id.  Accordingly, the Court may limit leading questions by the defense on cross-examination where a Government witness is closely identified with Defendant Schiff.

### E.    Expert Witnesses

As previously noticed, the United States will offer the testimony of Dr. C. Paul Wazzan pursuant to Federal Rules of Evidence 702, 703, and 705.  The Government will address any issues related to Dr. Wazzan's testimony in a separate motion.

### F.    Hypothetical Questions

The Government may seek to examine witnesses through hypothetical questions.  The use of hypothetical questions in fraud prosecutions is well-established.  See, e.g., United States v. Bush, 522 F.2d 641, 650 (7th Cir. 1975) (approving hypothetical questions "used to show that a defendant's active misrepresentations or active concealment were materially relied upon by a victim of the fraud"); see also United States v. Ranney, 719 F.2d 1183, 1187-89 (1st Cir. 1983)

(approving use of hypothetical questions in mail fraud prosecution); United States v. Isaacs, 493 F.2d 1124, 1162 (7th Cir. 1974) (citing United States v. Aleli, 170 F.2d 18, 20 (3d Cir. 1948)).

In particular, the Government may seek to conduct similar questioning here to prove the materiality of certain representations and nondisclosures.  Materiality of false statements or omissions is an element of a criminal prosecution for securities fraud under Section 10(b) and Rule 10b-5.  United States v. Peterson, 101 F.3d 375, 380 (5th Cir. 1996).  Material information is defined as "information that would be important to a reasonable investor in making his or her investment decision."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1425 (3d Cir. 1997).  To be material, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available."  Basic Inc. v. Levinson, 485 U.S. 224, 231-32 (1988).  To satisfy this requirement, the Government may ask witnesses to testify as to their understanding of BMS's sales incentives and build-up of wholesaler excess inventory, and how those practices affected the reliability and accuracy of BMS's public statements concerning sales and earnings. These inquires are relevant and admissible to prove the effect of the disclosure of the fraud on the hypothetically reasonable investor that determines materiality.  Basic, 485 U.S. at 231-32; see also Eisenberg, 766 F.2d at 781.

### G.      Scope of Cross-Examination

The scope and extent of cross-examination lies entirely within the discretion of the Court, which may preclude questions for which the questioner cannot show a good faith basis.  United States v. Adames, 56 F.3d 737, 745 (7th Cir. 1995); United States v. Concepcion, 983 F.2d 369, 391 (2d Cir. 1992); see also United States v. Millan-Colon, 836 F. Supp. 1022, 1024 (S.D.N.Y.

1993) ("pure speculation" and "hypothesis" are not a substitute for a good faith basis).  Thus, while "counsel may explore certain areas of inquiry in a criminal trial without full knowledge of the answer to anticipated questions, he must, when confronted with a demand for an offer of proof, provide some good faith basis for questioning that alleges adverse facts."  United States v. Ferby, 108 Fed. Appx. 676, 679 (2d Cir. 2004) (quoting United States v. Katsougrakis, 715 F.2d 769, 779 (2d Cir. 1983)).  Similar good faith foundations for defense questions are appropriate and reasonable here.

### H.    Questions Concerning Character and Reputation

Defendant Schiff may seek to introduce evidence of his reputation or character during the trial.  The Government requests that the Court limit any such offer to the limited grounds established by Federal Rule of Evidence 405.  Rule 405(a) provides three different methods of proving character: (1) testimony as to reputation; (2) testimony in the form of opinion; and (3) inquiry into specific instances of conduct.  Any character evidence the defendant intends to introduce must be "pertinent," meaning relevant to issues germane to the case.  United States v. Sanchez-Gonzalez, 294 F.3d 563, 567 (3d Cir. 2002).  While the evidence must always be pertinent to a trait at issue in the case, the standards governing the admissibility of character evidence vary on direct and cross-examination.

During direct examination, a defendant may "open[] the door to a discussion of his character by calling character witnesses under Rule 404(a)(1)."  2 Weinstein's Evidence § 405[02].  While direct character witnesses may testify as to a defendant's reputation in the community or may provide opinion testimony, they are precluded from testifying "about defendant's specific acts or courses of conduct."  Michelson v. United States, 335 U.S. 469, 477

(1948).  In other words, an opinion witness testifying to character on direct examination may give a general description of his acquaintance with the defendant, but is barred from testifying further about specific conduct.  Moreover, with regard to reputation testimony, the witness must demonstrate familiarity with the defendant's reputation in the community, as well as the witness's membership in the community.  See United States v. Perry, 643 F.2d 38, 52 (2d Cir. 1981); 2 Weinstein's Evidence § 405[02].  The testimony must also be limited to a time "contemporaneous with the acts charged."  United States v. Curtis, 644 F.2d 263, 268 (3d Cir. 1981).

Under Rule 405(a), a defendant's introduction of character testimony opens the door to cross-examination of the character witnesses, allowing the Government to cross-examine the witness concerning specific instances of the defendant's conduct.  United States v. Kellogg, 510 F.3d 188, 192 (3d Cir. 2007).   In addition, where there is direct testimony addressed to community reputation, the Government is permitted to inquire "about conduct, and even about charges, which may have come to the attention of the relevant community."  Curtis, 644 F.2d at 268.  Where a defendant offers opinion testimony, the Government may inquire about matters "which bear on the fact or factual basis for formation of opinion."  Id.  The scope of cross-examination concerning character opinion is thus broader than permitted for reputation testimony.  The Government is entitled to challenge both the witness's testimonial qualifications and the opinion itself.  Id. at 268-69.  The examination may include questions about the charged crime to test the witness's bias and own standards by asking "whether the witness would obtain a favorable opinion of the defendant even if the evidence at trial proved guilt."  Kellogg, 510 F.3d at 196.

-13-

**I.      BMS's Deferred Prosecution Agreement, Civil Settlements, and Financial Restatement**

As explained in prior filings, the Government does not presently intend to offer in its case-in-chief evidence or testimony concerning BMS's Deferred Prosecution Agreement (the "DPA"), the company's civil settlements, or its amended Form 10-K filing (the "Restatement"). Instead, the Government will offer the DPA, the civil settlements, the restatement, and revenue recognition concepts at trial if, for example, needed to rebut claims by Schiff that BMS did not engage in culpable conduct, whether introduced through their own testimony, cross-examination of Government witnesses, testimony of defense witnesses, or the arguments or questions of counsel.  If Defendant Schiff chooses to raise such issues in his arguments, the testimony of defense witnesses, or in his cross-examination of the Government's witnesses, the Government is free to introduce evidence of the DPA, the civil settlements, or revenue recognition as necessary. Courts have made clear that "[w]hen a party opens up a subject, even though it may not be strictly relevant to the case, he cannot complain . . . if the opposing party introduces evidence on the same subject."  United States v. Lynch, 699 F.2d 839, 844 (7th Cir. 1983) (quoting United States v. Bolin, 514 F.2d 554, 558 (7th Cir. 1975)).  Evidence may therefore be introduced to rebut arguments based on inadmissible evidence raised by a party in opening statements.  United States v. Milan, 304 F.3d 273, 290 n.22 (3d Cir. 2002); United States v. Millard, 139 F.3d 1200, 1204 (8th Cir. 1998); Lynch, 699 F.2d at 844; United States v. Reece, 614 F.2d 1259, 1262 (10th Cir. 1980).  Likewise, the doctrine of curative admissibility prevents a party from relying on inadmissible evidence by allowing the opponent to introduce rebuttal evidence on the same subject.  Government of the Virgin Islands v. Archibald, 987 F.2d 180, 187-88 (3d Cir. 1993); see United States v. Chinnery, 68 Fed. Appx. 360, 366-67 (3d Cir. 2003); United States v.

-14-

Rodriguez, 961 F.2d 1089, 1096 (3d Cir. 1992); United States v. Rucker, 188 Fed. Appx. 772, 778-79 (10th Cir. 2006).  Finally, the principle of completeness holds that when a witness testifies as to part of a matter, "the opposing party may elicit testimony on the whole thereof, to the extent it relates to the same subject matter and concerns the specific matter opened up." United States v. Davis, 183 F.3d 231, 256 (3d Cir. 1999); see also Chinnery, 68 Fed. Appx. at 367.

It is impossible for the Government, or the Court, to anticipate all of the ways in which Defendant Schiff might place issues related to these subjects before the jury.  For instance, if Schiff attempted to argue that BMS never acknowledged the misstatements and omissions charged in this case, the company's civil settlements, as well as the DPA and the restatements, would be highly relevant rebuttal or re-direct evidence.  Obviously, if Defendant Schiff seeks to argue that BMS has not acknowledged any wrongdoing, or that the company never disputed the substance of his disclosures to the market, evidence that BMS took the self-critical step of admitting that the company's prior disclosures were materially false, and entering into a DPA, will become entirely relevant.  Fed. R. Evid. 401 (Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").  Likewise, if Schiff sought to impeach the credibility of witnesses involved in BMS's disclosures of the true amount of wholesaler excess inventory, and the related financial impact, evidence of the settlements, restatement, and DPA, may be relevant to give the full context of any alleged bias.  See United States v. Gilbert, 668 F.2d 94, 98 (2d Cir. 1981) (in a criminal prosecution for securities fraud, evidence of a consent degree in a civil case signed by the defendant was properly admitted to

prove his knowledge of SEC reporting requirements); see generally Fed. R. Evid 408 (prohibition against the admission of evidence of accepting a compromise of a legal claim to "prove liability for invalidity of the claim or its amount . . . . does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness").

As explained, the Government does not presently intend to raise these issues during its opening statement, or the presentation of its direct case.  If, based on Schiff's arguments and evidence, the Government seeks to elicit evidence about these issues on direct or redirect examination of one of its witnesses, or during its rebuttal case, the Government will give the Court and counsel as much notice as possible.

## III.   GENERAL EVIDENTIARY ISSUES

### A.   Authenticity

Under the Federal Rules of Evidence, all that is required to authenticate a document is that the proponent offer "evidence sufficient to support a finding that the matter in question is what its proponent claims."  Fed. R. Evid. 901(a).  Rule 901(b) provides examples of ways to authenticate trial exhibits, including by testimony of a witness with knowledge.  Id. 901(b)(1). The Government may therefore rely on "appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with the circumstances."  Fed. R. Evid. 901(b)(4); see United States v. McGlory, 968 F.2d 309, 328 (3d Cir. 1992); Link v. Mercedes-Benz of North America, 788 F.2d 918, 927 (3d Cir. 1986).  Likewise, "'[a] document or telephone conversation may be shown to have emanated from a particular person by virtue of its disclosing knowledge of facts known peculiarly to him.'"  United States v. Console, 13 F.3d 641,

661 (3d Cir. 1993) (quoting Fed. R. Evid. 901 advisory committee notes)).  As the Third Circuit

has explained:

> [A]uthenticity is not on a par with more technical evidentiary rules, such as
> hearsay exceptions, governing admissibility.  Rather, there need be only a prima
> facie showing, to the court, of authenticity, not a full argument on admissibility.
> Once a prima facie case is made, the evidence goes to the jury and it is the jury
> who will ultimately determine the authenticity of the evidence, not the court.

Link, 788 F.2d at 928 (quoting United States v. Goichman, 547 F.2d 778, 784 (3d Cir. 1976)).

For this reason, "[t]he burden of proof of authentication is slight."  United States v. Reilly, 33

F.3d 1396, 1404 (3d Cir. 1994); accord United States v. Scurlock, 52 F.3d 531, 538 (5th Cir.

1995) ("Conclusive proof of authenticity is not required.").  The Government will rely on these

well-established guidelines in authenticating its evidence before admission.

Finally, some of the documents the United States intends to introduce as evidence are

photostatic copies of the originals.  Under the Federal Rules of Evidence, photostatic copies are

admissible as duplicates at trial.  Rule 1001(4) defines "duplicate" in such a way as to include

photocopies, and Rule 1003 provides for the use of duplicates to the same extent as originals,

unless there is a genuine question raised as to the authenticity of the originals.

**B.    Summary Charts**

Under Federal Rule of Evidence 1006 the contents of voluminous writings which cannot

conveniently be examined in court may be presented in the form of a chart, summary, or

calculation.  United States v. Pelullo, 964 F.2d 193, 204 (3d Cir. 1992); United States v.

Lavergne, 805 F.2d 517, 521-22 (5th Cir. 1986); United States v. Bertoli, 854 F. Supp. 975, 1050

(D.N.J. 1994).  There is no requirement that the court find it to be "literally impossible to

examine the underlying records before a summary chart may be utilized."  United States v.

-17-

Scales, 594 F.2d 558, 562 (6th Cir. 1979). Instead, the court need only find that in-court examination would not be convenient. The foundation for the introduction of a summary chart may be established by either the person who prepared the chart or a person who has reviewed the underlying documents and has confirmed the accuracy of the chart. See United States v. Strauss, 473 F.2d 1262, 1273 (3d Cir. 1973). The foundation witness need not be an expert, if preparing and explaining the summary chart does not require any special expertise. United States v. Jennings, 724 F.2d 436, 443 (5th Cir. 1984).

The Government anticipates using summary charts and will attempt to reach a stipulation as to their admissibility with Defendant Schiff.

### C.      Demonstrative Evidence

In addition to Rule 1006 summaries, the Government may also seek to introduce charts, or other pedagogical aids such as lists or timelines, under Rule 611(a). The admissibility of such evidence is within the Court's discretion and should be permitted in this matter. Bertoli, 854 F. Supp. at 1050.

Under Rule 611(a), the Court exercises control "over the mode and order of interrogating witnesses and presenting evidence" during a trial. Courts regularly admit charts under Rule 611(a). See, e.g., United States v. Paulino, 935 F.2d 739, 752-54 (6th Cir. 1992); United States v. Gardner, 611 F.2d 770, 776 (9th Cir. 1980); United States v. Pinto, 850 F.2d 927, 935 (2d Cir. 1988); United States v. Possick, 849 F.2d 332, 339 (8th Cir. 1988). Demonstrative charts that summarize other evidence may include assumptions or conclusions. See United States v. Norton, 867 F.2d 1354, 1363 (11th Cir. 1989) ( "[T]he essential requirement is not that the charts be free from reliance on any assumptions, but rather that these assumptions be supported by evidence in

the record."). Finally, courts have ruled that an appropriate limiting instruction that the charts

themselves are not evidence should accompany Rule 611 demonstrative charts. <u>Paulino</u>, 935

F.2d at 752-54.

## IV.     FEDERAL RULE OF EVIDENCE 801

Federal Rule of Evidence 801 establishes the framework for analyzing out of court

"statements," defined as "an oral or written assertion" or "nonverbal conduct of a person, if it is

intended by the person as an assertion." Fed. R. Evid. 801(a). Federal Rule of Evidence 801(c)

defines "hearsay" as "a statement, other than one made by the declarant while testifying at the

trial or hearing, offered in evidence to prove the truth of the matter asserted." Courts have held

that questions are not statements within the meaning of Rule 801 because they are not

"assertions" by the declarant. <u>Lexington Ins. Co. v. W. Pennsylvania Hosp.</u>, 423 F.3d 318, 330

(3d Cir. 2005); <u>United States v. Oguns</u>, 921 F.2d 442, 448-49 (2d Cir. 1990). In addition to the

limitations on "hearsay" implicit in this definition, Rule 801 defines several categories of

statements that are expressly defined as "not hearsay," and are therefore admissible without

regard to Rule 802. These limitations and exceptions may be used by the Government at trial,

and are discussed in detail below.

### A.     Statements Not Offered For Their Truth

The Government may offer documents or testimony for a non-hearsay purpose; that is, for

a purpose other than "to prove the truth of the matter asserted." Where "the significance of an

offered statement lies solely in the fact that it was made, no issue is raised as to the truth of

anything asserted." Fed. R. Evid. 801 advisory committee notes. In short, if a statement is not

offered for its truth, it is not objectionable as hearsay under Rule 802. <u>See</u>, <u>e.g.</u>, <u>United States v.</u>

-19-

Reilly, 33 F.3d 1396, 1410 (3d Cir. 1994) (affirming admissibility of telegraphed instructions to ship captain to prove the instructions were given, and to show the sender's state of mind); see also United States v. Dupre, 462 F.3d 131, 136-37 (2d Cir. 2006) (admitting e-mails in fraud prosecution to demonstrate context of defendant's response and prove the defendant's state of mind); United States v. Vazquez-Rivera, 407 F.3d 476, 482-83 (1st Cir. 2005) (admitting testimony concerning drug operation to prove omissions in agent's notes, not to prove existence of the charged conspiracy); United States v. Arthur Anderson, 374 F.3d 281, 292 (5th Cir. 2004), rev'd on other grounds, 125 S. Ct. 2129 (2005) (admitting employee notes to prove employer's knowledge of regulatory investigation).

The Government may seek to offer statements not for their truth, but to prove the declarant or recipient's knowledge or notice.  Statements that reveal the parties' state of mind, rather than the truth of their content, fall outside the definition of hearsay.  United States v. Calhoon, 97 F.3d 518, 533 (11th Cir. 1996) (admitting evidence of attorney advice concerning corporate accounting to prove defendant's notice of attorney's actions).  Similarly, the Government may offer statements showing the context of the parties' actions to show the motive or intent behind their conduct, or to demonstrate other states of mind.  United States v. Brown, 459 F.3d 509, 528-29 (5th Cir. 2006) (admitting e-mail to prove author's belief that corporate transaction had been approved by financial officer).  The Government may also offer statements showing the Defendant's relationship to other parties, or his custom of communicating by e-mail.  United States v. Siddiqui, 235 F.3d 1318, 1323 (11th Cir. 2000).  Likewise, the Government may offer e-mail documents to rebut claims by Defendant Schiff that he lacked the knowledge of his wrongdoing.  See United States v. Lee, 427 F.3d 881, 896-97 (11th Cir. 2005) (finding no error

in admission of bank employee e-mail stating "Wyman is a con artist" for the non-hearsay

purpose of "showing the banks were aware that these transactions were wrongful").

Finally, the Government may offer certain false statements to prove the fact that they

were made.  Where the Government does not contend that the declarant's statement was true,

there is no hearsay objection to the admission of the statement.  Anderson v. United States, 417

U.S. 211, 220 (1974) ("Out-of-court statements constitute hearsay only when offered in evidence

to prove the truth of the matter asserted."); United States v. Hathaway, 798 F.2d 902, 905 (6th

Cir. 1986) ("When statements are offered to prove the falsity of the matter asserted, there is no

need to assess the credibility of the declarant."); United States v. Wellington, 754 F.2d 1457,

1464 (9th Cir. 1985) (false "representations are not hearsay because their probative value is

independent of their truth").

### B.      Adopted Statements

A statement is not hearsay when offered against a party who has "manifested an adoption

or belief in its truth."  Fed. R. Evid. 801(d)(2)(B).  A statement may be adopted by a person

through words, conduct, or silence.  United States v. Young, 833 F.2d 709, 716 (7th Cir. 1987).

For example, a person who signs copies of documents may adopt the statements contained in the

record.  McQueeney v. Wilmington Trust, Co., 779 F.2d 916, 930 (3d Cir. 1985).  Likewise,

where an employee forwards the contents of an e-mail message to another recipient and

comments on the content, the sender manifests an adoption or belief in the truth of the

information contained in the original e-mail.  See United States v. Safavian, 435 F. Supp. 2d 36,

43-44 (D.D.C. 2006); see also Sea-Land Serv., Inc. v. Lozen, Int'l, LLC, 285 F.3d 808, 821 (9th

Cir. 2002); Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 454 F. Supp.2d 966, 973 (C.D.

Cal. 2006) ("To the extent other content is incorporated into these emails, and to the extent the . .

. agent expresses approval thereof, the incorporated content is admissible as vicarious

adoptions.").

### C.     Authorized Statements

Where a party authorizes another to "make a statement concerning the subject"

authorized, the statement is not objectionable as hearsay.  Fed. R. Evid. 801(d)(2)(C).  Reilly, 33

F.3d at 1412-13.  "Authority to make a statement can be bestowed upon virtually anyone, either

expressly or implicitly." 5 Weinstein's Federal Evidence § 801.32.  For example, where a

business commissions a report on its operations, and distributes the resulting work product to its

executives and officers, the company has authorized the report and the statements are admissible

under Rule 801(d)(2)(C).  United States v. Sanders, 749 F.2d 195, 199-200 (5th Cir. 1984); Reid

Bros. Logging Co. v. Ketchikan Pulp Co., 699 F.2d 1292, 1306-07 (9th Cir. 1983); see also

United States v. Draiman, 784 F.2d 248, 256-57 (7th Cir. 1986) (admitting report prepared by

defendant's accountant); Rissna v. American Broadcasting Co., Inc., 219 F. Supp.2d 568, 572

(S.D.N.Y. 2002).

### D.     Statements of Agents

Federal Rule of Evidence 801(d)(2)(D) "treats as party admissions statements by the

party's agents or employees if they were made during the agency or employment and they relate

to a matter within the scope of the agency or employment." 5 Weinstein's Federal Evidence §

801.33.  Three requirements are necessary to satisfy Rule 801(d)(2)(D): (1) an agency or

employment relationship between the declarant and the defendant; (2) a statement made during

the courts of that agency or employment; and (3) a statement related to a matter within the scope

of the agency or employment.  The scope of the agency relationship may be shown by a mere preponderance of the evidence.  See Riley v. K Mart Corp., 864 F.2d 1049, 1055-56 n.8 (3d Cir. 1988).  In making this determination, the Court may consider the contents of the statement itself. Fed. R. Evid. 801(d)(2).  The term "agent" is given the traditional meaning as defined by the federal common law principles of agency.  Lippay v. Christos, 996 F.2d 1490, 1497 (3d Cir. 1993).  The declarant need not have specific authorization to make the statement.  United States v. Portsmouth Paving Corp., 694 F.2d 312, 321 (4th Cir. 1982).  Moreover, the declarant need not have personal information supporting the statements because "it is sufficient under the Rule for the declarant to be a party's employee and to have made the declaration within the scope of the employment."  Lexington Ins. Co. v. Western Penn. Hosp., 423 F.3d 318, 331 (3d Cir. 2005).

In the context of a statement offered against a corporate executive, courts have explained that Rule 801(d)(2)(D) admissions necessarily depend upon the relationship between the employee and the officer.  United States v. Agne, 214 F.3d 47, 54-55 (1st Cir. 2000); Lippay, 996 F.2d at 1498-99; United States v. Young, 736 F.2d 565, 567-68 (10th Cir. 1984).  A suitable agency relationship "may be established by a variety of evidence" such as "evidence the declarant is directly responsible to the defendant," a direct reporting structure, that the declarant was hired by the defendant, that the delcarant "worked on matters in which the defendant was actively involved," or that the defendant "directed the declarant's work on a continuing basis."  Agne, 214 F.3d at 55 (citations omitted).  If evidence is offered pursuant to Rule 801(d)(2)(D), the Government will satisfy these requirements by a preponderance of the evidence.

-23-

### E.      Co-Conspirator Statements

The Government may seek to offer evidence pursuant to Federal Rule of Evidence 801(d)(2)(E).  The Government has addressed this issue separately in its February 12 Motion In Limine.

### F.      Statements of the Defendant

The Government will introduce Defendant Schiff's own written and oral statements as admissions of a party-opponent under Federal Rule of Evidence 801(d)(2)(A).[1]  United States v. Price, 13 F.3d 711, 719 (3d Cir. 1994); Safavian, 435 F. Supp. 2d at 43-44 (admitting defendant's own e-mail as a statement of the defendant).  In contrast, Defendant Schiff cannot use Rule 801(d)(2)(A) to offer his own prior statements into evidence.  As Rule 801 makes clear, a statement or assertion is not deemed hearsay if it is "offered against a party and is . . . the party's own statement, either in an individual or a representative capacity."  Fed. R. Evid. 801(d)(2)(A). (emphasis added).  Accordingly, prior statements or assertions of the Defendant, offered by the Defendant, cannot be admitted under Rule 801(d)(2) as non-hearsay.  See United States v. Hernandez, 176 F.3d 719, 726 (3d Cir. 1999).  Defendant Schiff should be precluded from offering his own statements under Rule 801(d)(2).

### G.      Prior Consistent Statements

If necessary, the Government may offer prior consistent statements of a witness to rebut a claim of recent fabrication or improper influence or motive.  Federal Rule of Evidence 801(d)(1)(B) explains that  "[a] statement is not hearsay if . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . .

---

[1] The Government previously moved in limine to admit the statements of Defendant Schiff pursuant to Rule 801(d)(2)(A).

[c]onsistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive. . . .". <u>See also</u> <u>Tome v. United States</u>, 513 U.S. 150, 698 (1995); <u>United States v. Provenzano</u>, 620 F.2d 985, 1001 (3d Cir. 1980).

Four requirements must be met in order for prior consistent statements to be admitted under this Rule: (1) the declarant must testify at the trial and be subject to cross-examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony; (3) the proponent must offer a prior consistent statement that is consistent with the declarant's challenged in-court testimony; and (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose. <u>United States v. Frazier</u>, 469 F.3d 85, 88 (3d Cir. 2006). The Government may offer these prior consistent statements not only for witness rehabilitation, but also as substantive evidence of the events that these statements describe. <u>United States v. Casoni</u>, 950 F.2d 893, 905 (3d Cir. 1991). Nothing in the Rule requires that the prior consistent statement contradict any testimony given on cross-examination; the prior statement must merely be offered to rebut a charge or implied charge of fabrication, <u>United States v. Young</u>, 105 F.3d 1, 9 (1st Cir. 1997), or improper motive, such as testimony in exchange for leniency, <u>see</u> <u>United States v. Montague</u>, 958 F.2d 1094, 1096 (D.C. Cir. 1992). In determining whether the defense is alleging that the witness recently concocted a story, the Court may refer to the defendants' opening arguments, as well as the defenses presented at trial. <u>See</u> <u>United States v. Reed</u>, 887 F.2d 1398, 1406 (11th Cir. 1989). The subjective intent of the cross-examiner is not relevant, and if the questioning objectively could permit the jury to infer a claim of fabrication, then the prior consistent statement is admissible

under Rule 801(d)(1)(B); <u>Young</u>, 105 F.3d at 8-9.  There need only be a suggestion that the witness consciously altered his testimony in order to permit the use of the prior consistent statements.  <u>Frazier</u>, 469 F.3d at 88.  In determining whether there has been a suggestion of conscious alteration by the opposing party, the Court must "make an objective determination based on its examination of the entire trial record to determine whether impeaching counsel's trial tactics could reasonably be taken by the jury as implying recent fabrication or improper inference or motive."  <u>Id.</u> at 89.

## V.       FEDERAL RULE OF EVIDENCE 803

Federal Rule of Evidence 803 lists a variety of out of court statements that are not excluded as hearsay under Rule 802.  These exceptions may be used by the Government at trial as discussed in detail below.

### A.       Present Sense Impressions

Federal Rule of Evidence 803(1) provides a hearsay exception for statements made by a declarant while, or immediately after, perceiving an event.  Four requirements must be shown to satisfy the exception: (1) the declarant must have personally observed the event described; (2) the statement must explain or describe the event; (3) the statement must be contemporaneous with the event, or immediately thereafter.  <u>United States v. Mitchell</u>, 145 F.3d 572, 576-77 (3d Cir. 1998).  As the Rule itself makes clear, "in many, if not most, instances precise contemporaneity is not possible and hence a slight lapse" between the event and the statement is permissible.  Rule 803(1) advisory committee notes.  Thus, for example, a lapse between an event and the sending of an e-mail describing or explaining the event, does not preclude admitting the statement as a present sense impression.  <u>United States v. Ferber</u>, 966 F. Supp. 90, 99-100 (D. Mass. 1997).

### B.      Excited Utterances

Federal Rule of Evidence 803(2) provides that an "excited utterance" is admissible as an

exception to the general prohibition on the introduction of hearsay.  Rule 803(2) defines an

"excited utterance" as a "statement relating to a startling event or condition made while the

declarant was under the stress of excitement caused by the event or condition."  The rationale for

this exception "lies in the notion that the excitement suspends the declarant's powers of

reflection and fabrication, consequently minimizing the possibility that the utterance will be

influenced by self interest and therefore rendered unreliable."  United States v. Brown, 254 F.3d

454, 458 (3d Cir. 2001).  Four requirements must be satisfied to introduce a hearsay statement

under Rule 803(2): (1) a startling occasion; (2) a statement relating to the circumstances of the

startling occasion, and (3) made by a declarant who appears to have had opportunity to observe

personally the events, where (4) the statement was made before the declarant had time to reflect

and fabricate.  Id.  In meeting these requirements, the Court may consider the statement itself as

sufficient evidence of the startling occasion.  Brown, 254 F.3d at 459.

### C.      Statements Concerning State of Mind

Federal Rule of Evidence 803(3) provides an exception to the hearsay rule for statements

of the declarant's "then existing state of mind, emotion, sensation, or physical condition."

Safavian, 435 F. Supp. 2d at 44 (admitting e-mail statements under Rule 803(3)).  The Rule does

not extend to statements of memory or belief to prove the fact remembered or believed.  Fed. R.

Evid. 803(c).  To invoke this exception, the statement must be contemporaneous with the

relevant mental state at issue.  Reppert v. Marino, No. 06-4239, 2007 WL 4547737, at *8 (3d Cir.

Dec. 27, 2007).  Among other things, the relevant state of mind can include motive or intent.  See

<u>U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3</u>, No. 00-4763, 2006 WL

2136249, at *10 (S.D.N.Y. Aug. 1, 2006) (admitting e-mail stating conditions under which

defendant would hire contractor); <u>Mota v. Univ. of Texas Houston Health Science Ctr.</u>, 261 F.3d

512, 527 (5th Cir. 2001) (admitting e-mail stating reasons for plaintiff's departure from

defendant employer).  The statements may also show the declarant's general state of mind.  <u>See</u>

<u>McInnis v. Fairfield Communities, Inc.</u>, 458 F.3d 1129, 1143 (10th Cir. 2006) (e-mail statement

"I am concerned for the future" falls within Rule 803(3)); <u>Molex, Inc. v. Wyler</u>, No. 04-1715,

2005 WL 497812, at *4 (N.D. Ill. Feb. 17, 2005) (admitting e-mail stating "[i]t is unreasonable to

expect Molex to give us all potential claims" as state of mind under Rule 803(3)).

### D.  Past Recollections Recorded

Federal Rule of Evidence 803(5) excludes from the hearsay prohibition a memorandum

or record concerning a matter about which a witness once had knowledge but now has

insufficient recollection to enable full and accurate testimony.  The Rule requires that the prior

statement have been made or adopted by the witness when the matter was fresh in the witness's

memory, and correctly reflects the matter.  Rule 803(5) applies only to the recorded recollection

of a witness who is present and testifies, and not to the recorded recollection of an absent

declarant.  Fed. R. Evid. 803(5) advisory committee note.

Although Rule 803(5) requires that the memorandum be made by the witness "when the

matter was fresh in the witness' memory," courts have declined to adopt any bright-line rule

regarding the timeliness of the recording.  <u>See United States v. Green</u>, 258 F.3d 683, 689 (7th

Cir. 2001) (permitting police report prepared 11 days after interview with defendant); <u>see also</u>

<u>United States v. Senak</u>, 527 F.2d 129, 141 (7th Cir.1975) (finding three-year delay between the

events and the creation of the memorandum not excessive); United States v. Smith, 197 F.3d 225, 231 (6th Cir. 1999) (allowing 15 month delay); United States v. Patterson, 678 F.2d 774, 779 (9th Cir. 1982) (allowing 10-month delay).  Instead, the Court should consider the lapse of time along with other circumstances that may be relevant in determining the likelihood that the witness had an accurate memory of the event at the time the record was prepared.  If, however, the witness is unable to recall the matter while testifying at trial, even after refreshing the witness's recollection, the Court may admit the relevant portions of the prior statement.  United States v. Cash, 394 F.3d 560, 564 (7th Cir. 2005); United States v. Barrow, 363 F.2d 62, 66-67 (3d Cir. 1966).

### E.    Business Records

The Government will seek to admit certain documents and records under the business-record exception to the hearsay rule.  Federal Rule of Evidence 803(6) permits the use of:

> [a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12) or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

Fed. R. Evid. 803(6).  The record offered into evidence under this Rule must satisfy the following requirements: (1) the document was prepared in the normal course of business; (2) the document was prepared at or near the time of the subject of the report; (3) the author had personal knowledge of the subject of the report; and (4) the records were regularly kept by the business.  United States v. Console, 13 F.3d 641, 657 (3d Cir. 1993).  Rule 803(6) does not

require that the person who transmitted the recorded information be under a business duty to accurately record the information. Id. (citing United States v. Patrick, 959 F.2d 991, 1001 (D.C. Cir. 1992)). Rather, it is sufficient if the Government demonstrates that the standard practice was to verify the information provided, or that the information transmitted meets the requirements of another hearsay exception. Id. at 657-58. In addition, "[n]onroutine records made in the course of a regularly conducted 'business' should be admissible if they meet the other requirements of Rule 803(6) unless 'the sources of information or other circumstances indicate lack of trustworthiness.'" United States v. Jacoby, 955 F.2d 1527, 1537 (11th Cir. 1992). The Government may establish the foundation under Fed. R. Evid. 803(6) by circumstantial, or a combination of direct and circumstantial, evidence. United States v. Kail, 804 F.2d 441, 448-49 (8th Cir. 1986).

The same foundations that permit the introduction of business documents apply to electronic documents and e-mails. See Reilly, 33 F.3d at 1414-15 (affirming admission of radiotelegraph as business record); United States v. Briscoe, 896 F.2d 1476, 1494 (7th Cir. 1990); Pierre v. RBC Liberty Life Ins., No. 05-1042, 2007 WL 2071829, at *2 (M.D. La. July 13, 2007) (admitting e-mails as business records); DirecTV, Inc. v. Murray, 307 F. Supp. 2d 764, 772 (D.S.C. 2004) (admitting e-mail business records).

In this case, the Government will offer certifications from BMS concerning all business records, including electronic documents and e-mails, to satisfy the foundations of Rule 803(6). The Government additionally anticipates that Defendant Schiff will seek to admit many of the same business records, and the Government presumes the Defendant will not argue inconsistent interpretations of Rule 803(6) based on the offering party. For these reasons, the Government

-30-

believes that the number and scope of evidentiary challenges concerning business records will be limited.

The Government notes, however, that Defendant Schiff may attempt to offer reports of securities analysts as business records. Analyst reports do not constitute business records under Rule 803(6). <u>See</u> <u>Schuster v. Symmetricon, Inc.</u>, 2000 WL 33115909, at *2 (N.D. Cal. Aug. 1, 2000); <u>In re Cirrus Logic Sec. Litig.</u>, 946 F. Supp. 1446, 1469 (N.D. Cal. 1996); <u>In re Sybase, Inc. Sec. Litig.</u>, 48 F. Supp. 2d 958, 960 (N.D. Cal. 1999). Given this authority, the Court should reject any attempt by Defendant Schiff to introduce analyst reports as substantive evidence of conversations with BMS.

## VI.     FEDERAL RULE OF EVIDENCE 403

The Government anticipates that Defendant Schiff will object to a variety of testimony and evidence citing Federal Rule of Evidence 403 which provides that relevant evidence may be excluded where "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403 is not a stringent standard justifying the exclusion of evidence. Rather, relevant evidence can be excluded under Rule 403 only if its unfairly prejudicial effect "substantially" outweighs its probative character, which thus creates "a presumption of admissibility." United States v. Cross, 308 F.3d 308, 323 (3d Cir. 2002). Simply stated, Rule 403 "does not offer protection against evidence that is merely prejudicial, in the sense that it is detrimental to a party's case [but rather] only protects against evidence that is unfairly prejudicial." <u>Carter v. Hewitt</u>, 617 F.2d 961, 972 (3d Cir. 1980). The Third Circuit has thus made clear that "[i]n weighing the probative value of evidence against

the dangers in Rule 403, the general rule is that the balance should be struck in favor of admission." United States v. Johnson, 199 F.3d 123, 128 (3d Cir. 1999).  For this reason, unfair prejudice arises in limited instances where the evidence is likely to "cause the jury to base its decision on something other than the established propositions in this case." United States v. McGlory, 968 F.2d 309, 339 (3d Cir. 1992).

The Government requests that any invocation of Rule 403 as a grounds for excluding relevant evidence be carefully scrutinized under the standard of admissibility outlined by the Third Circuit.

## VII.   FEDERAL RULE OF EVIDENCE 404(b)

Federal Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."  A "proper purpose" beyond mere propensity requires a "logical chain of inference" consistent with the Government's theory of the case.  Daraio, 445 F.3d at 263 (quoting United States v. Sampson, 980 F.2d 883, 888 (3d Cir. 1992)).  This showing is analyzed using the four-part test set forth in Huddleston v. United States, 485 U.S. 681 (1988): (1) the evidence must have a proper purpose; (2) it must be relevant; (3) its probative value is not substantially outweighed by its potential for unfair prejudice; and (4) the court must charge the jury to consider the evidence only for the limited purposes for which it is admitted.  Id. at 691-92; see also Daraio, 445 F.3d at 264; United States v. Vega, 285 F.3d 256, 261 (3d Cir. 2002).  The admissibility of Rule 404(b) evidence is committed to this Court's discretion.  United States v. Balter, 91 F. 3d 427, 437 (3d

-32-

Cir. 1995).  The requirements for admissibility established by the Third Circuit apply equally to all parties.

## VIII.   CONCLUSION

For these reasons, the Court should admit the evidence referenced in this trial memorandum and permit the United States to prove its case consistent with the law articulated in this memorandum.

Respectfully submitted,

CHRISTOPHER J. CHRISTIE
United States Attorney

/s/ Paul B. Matey

By: Joshua Drew
Michael Martinez
Paul B. Matey
Assistant U.S. Attorneys

Dated: February 22, 2008

**CERTIFICATE OF SERVICE**

I, Paul B. Matey, hereby certify that on February 22, 2008 I caused to be served copies of

the Trial Memorandum of the United States via electronic filing on:

David M. Zornow, Esquire                    Richard M. Strassberg, Esquire
Skadden, Arps, Slate,                       Goodwin Proctor LLP
 Meagher & Flom, LLP                        599 Lexington Avenue
Four Times Square                           New York, New York 10022
New York, New York 10036

Attorney for Frederick S. Schiff            Attorney for Richard J. Lane

/s/ Paul B. Matey

PAUL B. MATEY
Assistant United States Attorney